POPULAR PRICED TAILORING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9222.   Promulgated October 17, 1927.

*John O. Bigelow, Esq.*, and *Edward R. Burt, C. P. A.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

LANSDON: This appeal is from the refusal of the respondent to allow the claim of the petitioner for affiliation with another company engaged in the same business under the same management and occupying the same office and business rooms. The period involved is January 1 to June 30, 1920, and the amount in controversy is $9,960.18.

### FINDINGS OF FACT.

The petitioner was a corporation engaged in the wholesale tailoring business in Chicago, Ill. It was organized in 1915 under the laws of the State of Illinois. The corporation with which affiliation is claimed is H. A. Elman & Co., which was organized in 1910 under the laws of the State of Illinois and at all times since its organization

has been engaged in the wholesale tailoring business. The two companies were organized by H. A. Elman and were completely under his control and management at all times, and especially during the period here involved. They occupied the same rooms, had the same ~mployees and were engaged in exactly the same kind of business from the date of the organization of the petitioner until June 30, 1920, at which time H. A. Elman & Co. purchased all the stock of the Popular Priced Tailoring Co.

The companies' books indicate that the capital stock of the two companies was held as follows during the period here involved:

| Name of holder | Popular Priced Tailoring Co. | Elman & Co. |
|---|---|---|
| | Shares | Shares |
| H. A. Elman | 6,000 | 277 |
| Ella D. Elman | | 5,612 |
| Hyman Elman | 500 | 92 |
| J. M. Elman | 3,500 | 1,519 |
| | 10,000 | 7,500 |

Ella D. Elman held the stock of Elman & Co. in her name for the benefit and to the use of H. A. Elman and for no other purpose or use. Elman was the owner of the stock held by her, exercised complete control over it, voted it and transferred it at pleasure. When Elman requested her to transfer shares to other parties, she simply signed her name as and where requested. The company's books show that all cash dividends on account of this stock were allocated and paid to H. A. Elman.

Separate books were kept for the two companies and each also had a separate bank account. The disbursements were allocated to the companies according to the amounts they respectively had available when payments were due.

The respondent found the deficiency of $9,960.18 against the petitioner and overpayments of about $4,000 by H. A. Elman & Co.

Two years prior to the organization of H. A. Elman & Co., Elman endorsed a note for a friend on which suit was afterward brought and judgment secured against him. He arranged to pay off the judgment at the rate of $2 per week. In 1910, just after he organized the corporation, he transferred 239 of his 240 shares to his sister because he feared that otherwise his creditors might make trouble for him and cause him considerable loss. Although he satisfied the judgment before the close of 1912, he continued for business reasons to keep a large part of his interest in the stock of the petitioner in the name of his sister. He always treated this property as his own and she received no financial return whatever from it.

She testified that she did not at any time during the half year involved, have any financial interest whatever in H. A. Elman & Co. nor receive any cash dividends whatever from the stock and that so far as she knew, he exercised complete control over it.

The petitioner and H. A. Elman & Co. were affiliated during the taxable year.

*Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.